**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALL DELIVERY SYSTEMS, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>DARYL MORGAN, *et al*,<br><br>    Defendants. | Case No.: 2:20-cv-04637-CBM-(PDx)<br><br>**ORDER RE: MOTION FOR SUMMARY JUDGMENT [DKT. 62]** |

The matter before the Court is Counter-Defendant Call Delivery Systems, LLC's ("Counter-Defendant" or "CDS") Motion for Summary Judgment against Counter-Claimants Daryl Morgan and Call Haven LLC's counterclaims. (Dkt. 62.) The matter is fully briefed.

## I. BACKGROUND

CDS is in the business of purchasing misdialed telephone calls from suppliers and routing them to buyers (SUF – Dkt. 63 at ¶ 6; 5/22/20 Decl. of Scott Richards, Dkt. 11-3, at ¶ 11.) CDS filed its Complaint against Defendants on May 22, 2020, bringing three causes of action against Mr. Morgan and CHP: (1) misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836; (2) misappropriation of trade secrets under the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426, *et seq.*; and (3) common law breach of the fiduciary duty of loyalty. (Compl. – Dkt. 1.)

|    |    |
|----|----|
| 1  | Defendant Morgan was Plaintiff's Chief Technology Officer ("CTO") until |
| 2  | he voluntarily resigned his employment on March 3, 2020. (SUF – Dkt. 63 at ¶ |
| 3  | 14.) From November 1, 2018 until May 31, 2018, Defendant Morgan Received an |
| 4  | annual salary of $ 125,000. (*Id*. at ¶ 15.) From July 1, 2018 through the date of |
| 5  | his resignation, Defendant Morgan received an annual salary of $150,000. (*Id*. at ¶ |
| 6  | 16.) The parties dispute what Defendant Morgan's job duties were while he was |
| 7  | employed at CDS. |
| 8  | On June 10, 2020, Defendant Morgan filed the following counterclaims |
| 9  | against Plaintiff: (1) Unpaid Overtime Wages; (2) Waiting Time Penalties – Cal. |
| 10 | Labor Code § 203; (3) Failure to Timely Furnish Accurate Itemized Wage |
| 11 | Statements – Cal. Labor Code § 226; (4) Breach of Contract; (5) Attorneys' Fees |
| 12 | pursuant to 18 U.S.C. § 1836(b)(3)(D); and (6) Attorneys' Fees under Cal. Civil |
| 13 | Code § 3426.4. CDS moved for summary judgment against all of Defendant |
| 14 | Morgan's counterclaims. (Mot. – Dkt. 62.) |
| 15 | |
| 16 | **II. JURISDICTION** |
| 17 | The Court has jurisdiction over this action pursuant to the Defend Trade |
| 18 | Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.* and supplemental jurisdiction |
| 19 | over Defendants counterclaims pursuant to 28 U.S.C. § 1367. |
| 20 | |
| 21 | **III. LEGAL STANDARD** |
| 22 | When considering a motion for summary judgment, the court must "draw |
| 23 | all justifiable inferences in favor of the nonmoving party, including questions of |
| 24 | credibility and of the weight to be accorded particular evidence." *Egberto v. Nev.* |
| 25 | *Dep't of Corr.*, 678 Fed. Appx. 500, 503 (9th Cir. 2017); Fed. R. Civ. P. 56. |
| 26 | Summary judgment is appropriate where, viewing the evidence in the light most |
| 27 | favorable to the nonmoving party, there is no genuine dispute as to any material |
| 28 | fact and the movant is entitled to judgment as a matter of law. *Scafidi v. Las Vegas* |

*Metro. Police Dep't*, 966 F.3d 960, 962 (9th Cir. 2020). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Id*. at 249.

The moving party bears the initial burden of demonstrating the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden on the moving party may be discharged by showing "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party meets the initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate specific materials in the record to show that there is a genuinely disputed fact. *Id.* at 324. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).

## IV. DISCUSSION

**A.   Counterclaim I: Unpaid Overtime Wages – Cal. Lab. Code §§ 510, 1194 and Wage Order 16-2001**

CDS seeks summary judgment of Defendants' Unpaid Overtime Wages counterclaim because Defendant Morgan was classified as a computer professional and administrative employee exempt from overtime pay. Defendants argue that Mr. Morgan does not meet any of the requirements for exemption.

**1. Labor Code § 515**

The Administration Exemption, Labor Code § 515(a) "exempts from overtime compensation 'executive, administrative, and professional employees' whose primary duties 'meet the test of exemption,' who 'regularly exercise[] discretion and independent judgment in performing those duties' and who earn a

monthly salary at least twice the state minimum wage for full-time employees." *Harris v. Super. Ct.*, 53 Cal. 4th 170, 178 (Cal. App. 2011).

### a. Computer Professional Exemption

To be considered a computer professional exempt from overtime rate of compensation, all of the following must apply:

> (1) The employee is primarily engaged in work that is intellectual or creative and that requires the exercise of discretion and independent judgment.
> (2) The employee is primarily engaged in [statutorily-defined duties related to computer system specifications]
> . . .
> (3) The employee is highly skilled and is proficient in the theoretical and practical application of highly specialized information to computer systems analysis, programming, or software engineering. . . .
> (4) The employee's hourly rate of pay is not less than thirty-six dollars ($36.00) or, . . . earns an annual salary of not less than seventy-five thousand dollars ($75,000) for full-time employment, . . . .

Cal. Lab. Code § 515.5(a); Wage Order No. 4-2001, subd. 1(A)(3)(h). "Primarily" means more than one-half (or 50 percent) of the employee's worktime. Cal. Lab. Code § 515(e).

### b. Administrative Employee Exemption

To be considered an administrative employee exempt from overtime rate of compensation, the employee must "(1) be paid at a certain level, (2) their work must be administrative, (3) their primary duties must involve that administrative work, and (4) they must discharge those primary duties by regularly exercising independent judgment and discretion." *Harris*, 53 Cal. 4th at 178. "[W]ork qualifies as 'administrative' when it is 'directly related' to management policies or general business operations." *Id.* at 181–82. "Work qualifies as 'directly related' if it satisfies two components." *Id.* "First, it must be qualitatively administrative.

Second, quantitatively, it must be of substantial importance to the management or operations of the business. Both components must be satisfied before work can be considered 'directly related' to management policies or general business operations in order to meet the test of the exemption." *Id.*

### 2. Evidence Related to Mr. Morgan's Job

It is undisputed that from November 1, 2017, until May 31, 2018, Mr. Morgan received an annual salary of $125,000. (SUF – Dkt. 63 ¶ 15.) It is also undisputed that from July 1, 2018, through the date of his resignation, Mr. Morgan received an annual salary of $150,000, well above the $75,000 factor requirement. (*Id.* ¶ 16.)

CDS submitted Mr. Morgan's deposition, in which he stated that he was "in charge of technology" at CDS and spent time "building the infrastructure and managing the traffic." (Decl. Landesman, Ex. 1 Depo. Morgan at p. 203:24-204:2; 42:13-16.) CDS also submitted excerpts of the deposition of one of its witnesses, Scott Richards, the CEO of CDS. (Dep. Richards at p. 26:12-25; Richards Decl. at 9.) Mr. Richards testified that Mr. Morgan was the Chief Technical Officer ("CTO") and ran the business operations of CDS. (*Id.* at p. 32:16-33:17.) He further testified that Mr. Morgan "built the entire highly technical platform" and was "doing everything originally" until CDS was able to hire a traffic manager. (*Id.* at p. 33:18-25.) Lastly, Mr. Richards testified that Mr. Morgan was a "highly trained computer technical specialist," "a real expert," and without Mr. Morgan the company "wouldn't have had a business." (*Id.* at p. 182:5-183:14.)

Plaintiff also submitted Mr. Morgan's Job Description, which stated that his responsibilities included:

    1. TFN management (SMS/800 and internally)
    2. IVR Call routing
    3. Call reporting
    4. Listening to call recordings
    5. Financial reporting (internally and externally)

    6. Lowering expenses like transport costs
    7. Utilizing technology to increase efficiencies
    8. Regular and frequent communications (both internally & externally)

(Decl. Scott, Ex. 6.) *See Combs v. Skyriver, Commc'ns, Inc.*, 159 Cal. App. 4th 1242, 1264 (Ct. App. 2008) (affirming a trial court's finding that Combs was exempt under the administrative exemption because Combs was responsible for "maintaining, developing and improving Skyriver's network, and his duties involved high-level problem solving, preparing reports for Skyriver's board of directors, capacity and expansion planning").

  Mr. Morgan does not dispute that his salary satisfies the first element of the administrative exemption. Instead, Mr. Morgan argues that to be exempt, an employee must have spent more than "50 percent of their time performing" non-manual or office work. Cal. Lab. Code § 515(e). In his declaration, he declared that "I was not an office administrator, and routinely performed manual work for much greater than 51% of my time at CDS". (Decl. Morgan ¶¶ 7, 27.) He also declared that he is not exempt under the "Executive Exemption" because he did not have authority to hire and fire employees. (*Id.* ¶ 8.) In his declaration, Mr. Morgan describes his "non-exempt work" as "manual entry of information regarding contacts with customers, making sales related contacts at industry events, getting new phone numbers added into the CD supplier base, provisioning numbers and removing numbers from activation." (Decl. Morgan ¶ 27.)

  **3. Sham Affidavit Rule**

  CDS contends that Mr. Morgan's declaration constitutes a sham affidavit because the description of his job in his declaration is vastly different from the testimony he gave during his deposition.

  A party cannot create an issue of fact precluding summary judgment by introducing an affidavit contradicting their prior testimony. *See Yeager v. Bowlin*,

693 F.3d 1076, 1080 (9th Cir. 2012) (comparing prior deposition testimony to affidavit).

> "[The] sham affidavit rule prevents a party who has been examined at length on deposition from raising an issue of fact simply by submitting an affidavit contradicting his own prior testimony, which would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact. But the sham affidavit rule should be applied with caution because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment. In order to trigger the sham affidavit rule, the district court must make a factual determination that the contradiction is a sham, and the inconsistency between a party's [earlier statement] and subsequent affidavit must be clear and unambiguous to justify striking the affidavit."

*Id.* (internal citations and quotation marks omitted). *See also Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ("[A] party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.").

During his deposition, Mr. Morgan testified as follows:

> Q. Part of your job while you were employed at CDS was to – **was to find and enter into contracts with suppliers, correct?**
> A. **I'm not necessarily sure if that was part of my job**. That was something that I did.
> Q. Okay. Well, it's something that you did while you were working at CDS and getting paid by CDS, right?
> A. Correct.
> Q. And you spent as much time as you could on that task because you knew it was an important task, correct?
> A. **It wasn't much time spent on that in particular as much as it was building the infrastructure and managing the traffic**

(Ex. 1 to CDS's Motion, Morgan Dep. Tr., at 41:24 – 42:16) (emphasis added). Mr. Morgan also testified that he was "responsible at Call Delivery for the lead generation software development and architectural design." (*Id.* at 202:16 – 21.)

In contrast, Mr. Morgan claimed in his declaration that he worked for CDS as a "a sales person who also helped in dealing with technical issues" and spent

"the vast majority of [his] work time doing non-exempt work, including but not limited to manual entry of information regarding contacts with customers [and] making sales related contacts at industry events . . . ." (Decl. Morgan – Dkt. 72 at 2:14–16, 7:17–23, 8:28–30, 9:4–8). He also declared that he "spent the majority of [his] time calling suppliers, going to trade shows for sales, and finding ways to get new phone numbers added into CDS's supplier base." (*Id*. at 7:17–22).

Mr. Morgan's declaration does not merely elaborate upon his prior deposition testimony. Instead, it directly contradicts it by describing entirely different job duties and responsibilities, none of which Mr. Morgan mentioned during his deposition. Moreover, the additional filings that the Court allowed Defendants to submit do not remedy or explain the discrepancies between Mr. Morgan's deposition testimony and his declaration. (Exs. 1 and 2 to Ring Decl. – Dkt. 92.) Thus, the Court finds that Mr. Morgan's declaration is a sham affidavit as to his testimony about his job duties and does not consider the testimony as evidence for summary judgment purposes. The Court does not, however, apply the sham affidavit rule to the portions of Mr. Morgan's declaration that do not pertain to his job duties at CDS. *See Ward v. Cty. Of Siskiyou*, 816 F. App'x 51, 54 (9th Cir. 2020) (affirming district court's decision to strike *portions* of a declaration under the sham affidavit rule).

Because the Court finds that Mr. Morgan's declaration is a sham affidavit, and Defendants have submitted no additional evidence, the Court also finds that there is no genuine issue of material fact as to whether Mr. Morgan was an exempt employee of CDS. Accordingly, the Court grants the Motion as to Counterclaim I.

**B.      Counterclaim II: Waiting Time Penalties**

CDS moves for summary judgment on Defendants' second counterclaim for waiting time penalties.

Pursuant to California Labor Code § 203, "an employer is liable for penalties if it 'willfully fails to pay' wages owed to an employee at the time he or she is discharged or quits." *Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1133 (C.D. Cal. 2011) (citing Cal. Lab. Code § 203(a)). "A willful failure to pay wages within the meaning of [that section] occurs when an employer intentionally fails to pay wages to an employee when those wages are due." *Id.* "However, a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203." *Alonzo*, 832 F. Supp. 2d at 1133 (citing Cal. Lab. Code § 203(a)).

"A 'good faith dispute' that any wages are due occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recover[y] on the part of the employee.'" *Green v. Lawrence Serv. Co.*, No. LA CV12-06155 JAK, 2013 U.S. Dist. LEXIS 109270, at *35 (C.D. Cal. July 22, 2013) (citing Cal. Code Regs., tit. 8, § 13520)). "'The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist.'" *Id.*

**1. Additional Wages and Good Faith**

The Court finds that Defendant Morgan was an exempt employee of CDS. Thus, because of his exempt status, Defendant Morgan is not entitled to any overtime pay wages. Cal. Lab. Code §§ 515(a). Accordingly, the Court grants the Motion for summary judgment on this issue.

**2. Vacation Pay**

Defendant Morgan also alleged that he is entitled to payment for unused paid time off ("PTO") that he acquired prior to resigning from CDS. CDS moves for summary judgment on this issue, contending that Defendant Morgan was not entitled to payment for unused PTO because CDS had an unlimited PTO policy for exempt employees.

In support of its argument, CDS offered as evidence an exhibit that it contends is CDS's unlimited PTO policy. (PTO Policy – Decl. Richards, Ex. A.) The policy states that, effective April 1, 2016, instead of accumulating accrued PTO, exempt employees had an "open availability of time to use at their discretion." (*Id.*) As Defendant Morgan identifies, however, the policy states that it is for Dial800 (the predecessor company to CDS) and not for CDS itself. Moreover, Defendant Morgan declared that "CDS never had a written time off policy that was ever communicated to the employees" and that "CDS cannot produce a signed [PTO] policy because it did not exist." (Decl. Morgan, ¶¶ 31, 33.) Thus, the policy cited by CDS and Defendant Morgan's declaration that a policy never existed raise a genuine dispute of material fact as to whether Defendant Morgan is entitled to unpaid PTO. Accordingly, the Court denies the Motion for summary judgment as to this issue.

C. **Counterclaim III: Failure to Timely Furnish Accurate Itemized Wage Statements**

The third counterclaim is predicated on the first and second counterclaims. Therefore, the Court grants the motion for summary judgment in favor of CDS on this counterclaim.

D. **Counterclaim IV: Breach of Contract**

Plaintiffs move for summary judgment on Defendants' fourth counterclaim for breach of contract.

"To establish a breach of contract, a plaintiff must prove (1) the existence of the contract, (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Justus v. Argosy Int'l, Inc.*, No. CV113120DSFPLAX, 2011 WL 13220309, at *2 (C.D. Cal. July 18, 2011) (citing *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821

(2011)); *Arminak v. Arminak & Assocs., LLC*, No. LACV1603382JAKSSX, 2017 WL 10403355, at *15 (C.D. Cal. Aug. 11, 2017). "Formation of a contract requires parties capable of consent, the consent of those parties, a lawful object, and sufficient consideration." *Karlsson v. Ewing*, No. CV 14-420 GAF (EX), 2014 WL 12849924, at *5 (C.D. Cal. June 26, 2014) (citing *ASP Properties Grp., L.P. v. Fard, Inc.*, 35 Cal. Rptr. 3d 343, 351 (Ct. App. 2005)). "'Consent' means 'mutual assent or consent on *definite or complete terms*." *Karlsson*, 2014 WL 12849924, at *5 (emphasis added) (citing *Netbula, LLC v. Bindview Dev. Corp.*, 516 F. Supp. 2d 1137, 1155 (N.D. Cal. 2007)).

Defendants' counterclaim for breach of contract is premised on the alleged formation of a bonus contract between Defendant Morgan and CDS. (Answer and Counterclaim, ¶ 76.) The parties dispute whether a contract was formed.

CDS contends that it never entered into a contract with Defendant Morgan that established that CDS owed him a bonus. In support of its argument, CDS cites to Defendant Morgan's deposition, in which he testified that he never entered into a written employment agreement with CDS. (Morgan Dep. At 56:8 – 58:9, 356:20 – 358:8; 358:24 – 363:25; 370:14 –373:13). Conversely, Defendants cite to Defendant Morgan's declaration in which he declared that the bonus contract was created through oral communications he had with Scott Richards and a letter dated May 31, 2018. (Morgan Decl. ¶¶ 11, 29, 30.) The parties' evidence creates a genuine dispute of material fact as to whether a contract was formed.

CDS also contends that the Court finds the existence of a bonus compensation contract, the condition precedent for providing the bonus was never satisfied. Specifically, CDS argues that for Defendant Morgan to receive a bonus, CDS must have had a 2018 salary equal or greater than $3.5 million and net profits equal or greater than $40,000. (Morgan Dep. at 361:10–24.) In 2018, CDS's salary was $3.462 million and therefore the condition precedent was never met. (*Id*. at 371:8–12.) Defendant Morgan declares, however, that CDS purposefully

manipulated their financial records and that the condition precedent was in fact met. (Morgan Decl. ¶¶ 12, 28, 29 & 30.) In *Jones v. Calpine Corp.*, 172 Fed. Appx 186, 187 (9th Cir. 2006), this Circuit applied Washington contract law and held that a party must fulfill a contract when that party deliberately prevents the occurrence of a condition precedent. Thus, because Defendants offer evidence that CDS deliberately manipulated their financial records to prevent the fulfillment of the condition precedent, there is a genuine issue of material dispute of fact as to whether a breach of contract occurred.

Accordingly, the Court denies the Motion for summary judgment as to the Counterclaim IV.

### E. Counterclaims V and VI: Attorneys' Fees

Defendants' Counterclaim includes two claims for Attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D) and Cal. Civil Code § 3426.4. CDS moves for summary judgment on the grounds that the counterclaims are procedurally improper under Federal Rule of Civil Procedure 54(d)(2)(A). Rule 54(d)(2) states that a *separate* motion for attorneys' fees must be filed within 14 days *after* the entry of judgment. Accordingly, the Court grants the motion for summary judgment on these counterclaims because requests for attorneys' fees are not counterclaims. If Defendants prevail on CDS' claims for trade secret misappropriation, however, they may file a motion for attorneys' under 18 U.S.C. § 1836(b)(3)(D) and California Civil Code Section 3426.4.

# V. CONCLUSION

The Court **GRANTS** Plaintiff's Motion for Summary Judgment as to Counterclaims I, II (for unpaid wages only), III, V, and VI, and **DENIES** the Motion as to Counterclaims II (for unpaid PTO only) and IV.

**IT IS SO ORDERED.**

DATED: March 16, 2022

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE