BURKHALTER KESSLER
CLEMENT & GEORGE LLP
Alton G. Burkhalter, Esq., Bar No. 119594
Email: aburkhalter@bkcglaw.com
Daniel J. Kessler, Esq. Bar No 173710
Email: djkessler@bkcglaw.com
Joshua A. Waldman, Esq., Bar No. 222859
Email: jwaldman@bkcglaw.com
2020 Main Street, Suite 600
Irvine, California 92614
Telephone: (949) 975-7500
Facsimile:  (949) 97s5-7501
Attorneys for Plaintiff
Call Delivery Systems, LLC

COHEN SEGLIAS PALLAS
GREENHALL & FURMAN PC
Jonathan Landesman, Esq.
Dana B. Hasness, Esq.
1600 Market Street, 32nd Floor
Philadelphia, PA 19103
TEL: 215-564-1700
FAX: 215-564-3066
jlandesman@cohenseglias.com
dhasness@cohenseglias.com
Co-Counsel for Plaintiff
Call Delivery Systems, LLC (admitted
pro hac vice)

Michael P. Ring, Esq.
RING & ASSOCIATES
1234 SANTA BARBARA STREET
SANTA BARBARA CA 93101
TEL. 805-564-2333
FAX 805-564-8899
mpr@ringlaw.net
Attorney for Defendants
Daryl Morgan and
Call Haven Partners, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA -WESTERN DIVISION

| | |
|---|---|
| Call Delivery Systems, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>Daryl Morgan, an individual; Call Haven Partners, LLC, a California limited liability company,<br><br>Defendants. | Case No.  2:20-cv-04637-CBM-PD<br>Honorable Consuelo B. Marshall<br>Courtroom 8B<br><br>[~~PROPOSED~~] FINAL PRETRIAL CONFERENCE ORDER *as modified by Court*<br><br>Complaint Filed: May 22, 2020<br>Pre-Trial Conference: September 5, 2023<br>Trial Date:  October 3, 2023 |

*CBM*

1

**[~~PROPOSED~~] FINAL PRETRIAL CONFERENCE ORDER**

Following pretrial proceedings, pursuant to F.R.Civ.P. 16 and L.R. 16, **IT IS ORDERED:**

1.     The Parties are:

    a)     Plaintiff / Counterclaim-Defendant, Call Delivery Systems, LLC;

    b)     Defendant / Counterclaimant, Daryl Morgan; and

    c)     Defendant, Call Haven Partners, LLC.

Each of the parties has been served and has appeared.

The pleadings which raise the issues are:

    a)     Plaintiff's Civil Action Complaint (ECF No. 1); and

    b)     Defendants' Answer to Plaintiff's Complaint and Affirmative Defenses and Counterclaims (ECF No. 30).

    c)     Plaintiff's Answer to Morgan's Counterclaims with Affirmative Defenses (ECF No. 32).

2.     Federal jurisdiction and venue are invoked upon the grounds that Plaintiff asserts a claim for violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, against Defendants, thereby invoking federal question jurisdiction under 28 U.S.C. § 1331, and the transactions and events giving rise to Plaintiff's claims arose within the Central District of California, making venue appropriate in this Court

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

1  pursuant to 28 U.S.C. § 1391(b)(2).  The facts requisite to federal jurisdiction are

2  admitted.

3

4      3.    The trial is estimated to take ten (10) trial days. *[handwritten: The Court determined this will be a 7 day trial.]*

6      4.    The trial is to be a jury trial.

7

8      At least ten (10) days prior to the trial date the parties shall file and serve by e-

9  mail, fax, or personal delivery proposed jury instructions as required by L.R. 51-1.

10  The parties shall submit special questions requested to be asked on *voir dire* on the

11  first day of trial.

12

13      5.    The following facts are admitted and require no proof:

14

15      a)    Plaintiff / Counterclaim-Defendant, Call Delivery Systems, LLC

16  (hereinafter, "CDS") is a California business, which is involved in interstate

17  commerce within the meaning of 18 U.S.C. § 1832(a).

18

19      b)    Defendant, Call Haven Partners, LLC (hereinafter, "Call Haven"),

20  is a California business, which is involved in interstate commerce within the meaning

21  of 18 U.S.C. § 1832(a).

22

23      6.    The following facts, though stipulated, shall be without prejudice to any

24  evidentiary objection:

25

26      a)    CDS is a California limited liability company, with a mailing

27  address of 8619 WASHINGTON BLVD, CULVER CITY CA 90232.

28

**[~~PROPOSED~~] FINAL PRETRIAL CONFERENCE ORDER**

b)     CDS is in the business of routing misdialed telephone calls.

c)     Less than 10% of the misdialed calls are placed to numbers held by CDS.

d)     The rest of the misdialed calls are placed to numbers held by CDS's suppliers.

e)     Collectively, CDS's suppliers control thousands upon thousands of telephone numbers, including toll-free numbers.

f)     CDS's suppliers provide misdialed calls to CDS so that they can be monetized, i.e., be sold to one of CDS's buyers.

g)     CDS negotiates different payment terms with each of its suppliers.

h)     CDS's buyers include a variety of businesses in different industries, including but not limited to companies selling cruise vacations, airline tickets, auto insurance, and legal services.

i)     CDS negotiates different terms with all of its buyers.

j)     Scott Richards (hereinafter, "Richards") was the CEO of CDS at all times relevant.

k)     Defendant / Counterclaimant, Daryl Morgan (hereinafter, "Morgan"), lives in Simi Valley, California.

4

l) Morgan was employed by CDS from prior to November 1, 2017 through March 4, 2020.

m) Morgan tendered his resignation to CDS effective March 4, 2020.

n) From November 1, 2017 until May 31, 2018, Morgan received an annual salary of $125,000 in addition to a fringe benefit package.

o) From June 1, 2018 through his last day at CDS, Morgan received an annual salary of $150,000 in addition to a fringe benefit package.

p) On January 30, 2020, while he was employed by CDS, Morgan registered the domain name www.CallHavenPartners.com.

q) On February 10, 2020, while he was employed by CDS, Morgan filed Articles of Organization for Call Haven Partners, LLC ("Call Haven").

r) Call Haven Partners, LLC is a California limited liability company, with a mailing address of 728 WIND WILLOW WAY, SIMI VALLEY CA 93065.

s) Like CDS, Call Haven is in the business of routing misdialed telephone calls.

7. This section of the Final Pretrial Conference Order is intended to finalize, in advance of trial, the claims and defenses to be presented at trial. In accordance with F.R.Civ.P. 16(c), parties will be precluded from presenting claims or defenses not set forth in this order, in the manner required by this Order, unless the Order is modified

to prevent manifest injustice.  Only claims or defenses contained in the complaint and answer and any court authorized amendment or supplement may be included in this Final Pretrial Conference Order.  If a party chooses to abandon a claim or defense previously alleged, it may do so by not including it in this Order, and the failure to include any pleaded claim or defense will be deemed to effect such a waiver.

<u>Plaintiff(s):</u>

(a)     Plaintiff plans to pursue the following claims against the following defendants:

**Claim 1:**  Defendants misappropriated CDS's trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* ("DTSA").

**Claim 2:**   Defendants misappropriated CDS's trade secrets in violation of the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426, *et seq.* ("CUTSA").

**Claim 3:**  As CDS's Chief Technology Officer, Morgan breached his fiduciary duty of loyalty to CDS.

(b)     The elements required to establish Plaintiff's claims are:

**<u>Claim 1:  Defendants' Violations of the DTSA</u>**

CDS must prove the following

      i.     CDS was the owner of an alleged trade secret;

**[~~PROPOSED~~] FINAL PRETRIAL CONFERENCE ORDER**

    ii.    The alleged trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce;

    iii.    The alleged trade secret qualified as a trade secret at the time it was allegedly misappropriated;

    iv.    Defendants improperly acquired, used and/or disclosed the alleged trade secret;

    v.    That such unlawful acquisition, use, or disclosure was a substantial factor in harming CDS;

    vi.    That CDS sustained actual losses from the misappropriation [or] the Defendants were unjustly enriched by the misappropriation.

Sources: 18 U.S.C. § 1836(b)(1); *Attia v. Google, LLC*, 983 F.3d 420, 424 (9th Cir. 2020).

**Claim 2:  Defendants' Violations of the CUTSA**

CDS must prove the following:

    i.    CDS was the owner of an alleged trade secret;

[~~PROPOSED~~] FINAL PRETRIAL CONFERENCE ORDER

    ii.    The alleged trade secret qualified as a trade secret at the time it was allegedly misappropriated;

    iii.    Defendants improperly acquired, used and/or disclosed the alleged trade secret;

    iv.    That such unlawful acquisition, use, or disclosure was a substantial factor in harming CDS;

    v.    That CDS sustained actual losses from the misappropriation [or] the Defendants were unjustly enriched by the misappropriation.

Source:  Judicial Council Of California Civil Jury Instruction No. 4401.

## Claim 3: Morgan's Breach of the Fiduciary Duty of Loyalty

A fiduciary duty imposes on an officer a duty to act with the utmost good faith in the best interests of his employer.  The elements of a claim for breach of fiduciary duty are: (i) the existence of a fiduciary relationship; (ii) its breach; and (iii) damage proximately caused by that breach.  With respect to the employment context, in particular, generally, a corporate officer may prepare to compete prior to resigning his office.  However, a corporate officer may not solicit customers or do other acts in direct competition to the current business prior to leaving that business.

Sources:  Judicial Council Of California Civil Jury Instruction No. 4100; *Knox v. Dean*, 205 Cal. App. 4th 417, 432-433 (2012); *Albert's Organics, Inc. v. Holzman*, 445 F. Supp. 3d 463, 480 (N.D. Cal. 2020).

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

(c)     In brief, the key evidence Plaintiff relies on for each of the claims is:

**Claim 1:  Defendants' Violations of the DTSA**

> *a.      **Morgan's Employment and Access to CDS's Trade Secrets.***

CDS is in the business of routing misdialed telephone calls in and throughout the United States.  Less than 10% of those misdialed calls are placed to numbers held by CDS.  The rest of the misdialed calls are placed to numbers held by CDS's suppliers.  Collectively, CDS's suppliers control thousands upon thousands of telephone numbers, including toll-free numbers.  CDS's suppliers provide misdialed calls to CDS so that they can be monetized (i.e., be sold to one of CDS's buyers).  It is undisputed that CDS negotiates different payment terms with each of its buyers and suppliers.  CDS's buyers include a variety of businesses in different industries, including but not limited to companies selling cruise vacations, airline tickets, auto insurance, and legal services.  Morgan agrees that CDS also negotiates different terms with each of its Buyers, which are not generally known to the public.

Morgan was employed by CDS from prior to November 1, 2017 until he voluntarily resigned on March 4, 2020.  During his employment, Morgan reported directly to Scott Richards ("Richards"), CDS's former CEO.  At the time of his resignation, Morgan held the title of Chief Technology Officer.  Morgan had access to confidential information belonging to CDS, including terms contained in agreements between CDS and its suppliers and buyers, including unique pricing terms.

> *b.      **Morgan's Misappropriation of CDS's Confidential Customer Information and Surreptitious Efforts to Compete with CDS.***

9

Morgan previously denied reaching out to CDS's buyers and suppliers while he was still employed by CDS.  However, Morgan's deposition testimony and testimony at the first trial tells a different story.  Specifically, Morgan admitted that while he was still employed by CDS, he did, in fact, use CDS's customer information to solicit: (i) the owners of CDS's long-time buyers and suppliers; and (ii) Jodi Carrier, with whom CDS contracted to generate leads to begin doing business with his new competing business (Call Haven).  Morgan also testified that he kept his actions a secret from CDS because he knew that he would have been terminated if CDS discovered his misconduct.  Based upon his own testimony, it is clear that Morgan began reaching out to CDS suppliers and buyers to inform them about his competing business (for which he filed Articles of Organization on February 10, 2020), while he was still employed and being paid by CDS.

### c.   *Morgan's Spoliation of Evidence During this Litigation.*

As CDS's Chief Technology Officer, Morgan was responsible for developing and maintaining CDS's Toll-Free Number Algorithm ("TFNA") for the sole benefit of CDS, his employer.  The TFNA was critical to CDS's ability to route and monetize misdialed telephone calls – the lifeblood of CDS's business.  After he resigned from CDS, Morgan never returned the Microsoft Surface Pro (the "Surface Pro") that he used to perform his job duties on behalf of CDS.  During the course of discovery in this action, CDS requested that Morgan produce a forensic image of the Surface Pro, as well as any files or copies of software within his possession, which belong to CDS.

In response, Morgan agreed to have a forensic image of the Surface Pro created by a third party.  In order to do so, Morgan and his counsel engaged Bradley N. Maryman of Maryman & Associates to perform a forensic analysis on the Surface Pro.

Then, after Morgan and his counsel contacted Maryman, on October 10, 2020, Morgan performed a "factory reset" on the Surface Pro, thereby wiping its entire contents and making it impossible for anyone to determine whether or not information, files, or software belonging to CDS – including a copy of the TFNA and/or information related to CDS's Suppliers and Buyers – was being kept on the device for Morgan's benefit.  Indeed, on November 19, 2020, Morgan produced a "Potential Data Leakage and Device Analysis" Report prepared by Maryman, which states in the "Conclusion" section as follows:

> Based on the forensic examination of the Microsoft Surface Pro, no databases belonging to the third party were identified.
>
> Artifacts from the computer indicate that *a device factor resent had been performed on October 10th, 2020, which wiped all user data an system information prior to that date.*

Based upon the "Potential Data Leakage and Device Analysis" report of their own expert witness (Maryman), as well as the fact that Morgan admittedly destroyed ("smashed") the cellphone that he used during his employment with CDS, Defendants clearly failed to comply with their obligations to preserve relevant evidence during the pendency of this action, and, at a minimum, a jury must determine whether or not Morgan intentionally spoiled evidence.  *See AtPac, Inc. v. Aptitude Sols., Inc.,* No. CV 2:10-294 WBS JFM, 2011 WL 13242817, at *9 (E.D. Cal. Apr. 13, 2011) (citing *Phoceene Sous-Marine, S. A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 805–06 (9th Cir. 1982)) ("[i]n the context of spoliation of evidence, a nexus exists if the party destroyed documents that were relevant to discovery requests…Spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case and that such evidence was adverse to the party that destroyed it."); *CTC Glob. Corp. v. Huang*, No.

11

**[~~PROPOSED~~] FINAL PRETRIAL CONFERENCE ORDER**

1  SACV1702202AGKESX, 2019 WL 2610971, at *6 (C.D. Cal. Apr. 15, 2019)
2  (reiterating same principle and explaining that the "court need not find bad faith by
3  the offending party before issuing terminating sanctions for destruction of evidence;
4  willfulness *or fault* may suffice.").

### d.     *The Specific Buyers and Suppliers Stolen by Defendants and CDS's Monetary Damages and Loss of Customer Goodwill.*

Morgan is presently doing business with a long list of CDS's Buyers and/or Suppliers, and Call Haven's financial records confirm that since March 2020, Defendants have generated a substantial amount of revenue from those same entities. Once again, Morgan was entrusted with CDS's confidential information related to each of these entities, which became Buyers and/or Suppliers of his new business (Call Haven) as soon as just several days after he left CDS.  Furthermore, as set forth at length in the May 14, 2021 Expert Report of Chad Staller, J.D., MBA, MAC, CVA, CDS has sustained in excess of $2,000,000 in damages.  Thus, Defendants have been unjustly enriched.

In that regard, Mr. Morgan has agreed to update his discovery responses to provide additional information on economic damages, and Mr. Staller will update his expert report accordingly.

### Claim 2:  Defendants' Violations of the CUTSA.

The elements required to establish CDS's claim arising under the CUTSA are substantially the same as those giving rise to CDS's claim under the DTSA. Accordingly, CDS incorporated by reference the key evidence set forth above.

1
2

### Claim 3:  Morgan's Breach of the Fiduciary Duty of Loyalty.

3      As set forth above, at the time of his resignation, Morgan was employed by
4  CDS as its Chief Technology Officer.  It is also undisputed that Morgan not only filed
5  Articles of Organization for Call Haven on February 10, 2020, but he also reached out
6  to at least two (2) CDS Suppliers before he resigned from CDS, and solicited them to
7  work with his new competing business, Call Haven.  By taking steps to divert business
8  away from CDS while still employed as CDS's Chief Technology Officer, Morgan
9  went beyond the bounds of merely "preparing to compete" and into the realm of
10 actually competing with CDS during his employment as CDS's second-in-command.
11 In that regard, Morgan did, in fact, breach his fiduciary duty of loyalty, in violation of
12 California law.  Furthermore, it is undisputed that the two (2) CDS Suppliers which
13 Morgan admittedly solicited while he was employed as CDS's Chief Technology
14 Officer are now doing business with Call Haven, causing CDS to sustain damages in
15 the form of lost profits and customer goodwill.

16
17      Defendants(s):[1]

18
19      (a)    Defendant plans to pursue the following counterclaims and
20  affirmative defenses:

21
22  **Counterclaim 2:**  "Waiting Time Penalties" under Cal. Lab. Code § 203.

23
24

25      [1] The form Final Pretrial Conference Order designated as "Appendix A" to the
26  Local Rules does not include a separate section for CDS to set forth its evidence and
    Affirmative Defenses in opposition to Morgan's Counterclaims.  Accordingly, to the
27  extent the Court deems necessary, CDS hereby incorporates by reference its affirmative
28  defenses and said information contained in its Memorandum of Contentions of Fact and
    Law, which is set to be filed on or before August 15, 2023 pursuant to L.R. 16-4.

13

### ~~[PROPOSED]~~ FINAL PRETRIAL CONFERENCE ORDER

**Counterclaim 4:** "Breach of Contract" under California common law.[1]

      (b)    The elements required to establish Defendant's counterclaims and affirmative defenses are:

**<u>Counterclaim 2:  Waiting Time Penalties</u>**

Morgan must prove:

     i.    That Morgan's employment with CDS ended; and

     ii.    That CDS willfully failed to pay Morgan all wages when due;

     iii.    That CDS intentionally failed or refused to perform act of paying Morgan what wages were due which was required to be done. (*Barnhill v. Robert Saunders & Co.* 125 Cal.App.3d 1, 7 (1981); *Mamika v. Barca,* 68 Cal.App.4th 487, 493 (1998)

     iv.    More than 30 days have elapsed since Morgan's employment with CDS ended.

Morgan must also prove his daily wage rate at the time his employment with CDS ended and that CDS never paid Morgan all wages due.

---

[1] Pursuant to the Court's March 16, 2022 Order, Counts II and IV of Morgan's counterclaims were the only claims not dismissed.

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

Source:  Judicial Council Of California Civil Jury Instruction No. 2704. Cal. Labor Code § 203.

**Counterclaim 4:  Breach of Contract**

To recover damages for breach of contract, Morgan must prove:

i.  That he and CDS entered into a contract;

ii.  Morgan did all, or substantially all, of the significant things that the contract required him to do;

iii.  That all conditions required by the contract for CDS's performance were satisfied;

iv.  That CDS failed to do something that the contract required it to do;

v.  That Morgan was harmed; and

vi.  That CDS's breach of contract was a substantial factor in causing Morgan harm.

Source:  Judicial Council Of California Civil Jury Instruction No. 303.

(c)  In brief, the key evidence Defendant relies on for each counterclaim and affirmative defense is:

15

**Counterclaim 2:** "Waiting Time Penalties" under Cal. Lab. Code § 203.

Strong public policy in California has long favored the full and prompt payment of wages due an employee. "It has long been recognized that wages are not ordinary debts, that they may be preferred over other claims, and that, because of the economic position of the average worker and, in particular, his dependence on wages for the necessities of life for himself and his family, it is essential to the public welfare that he receive his pay when it is due." (*Kerr's Catering Service v. Department of Industrial Relations* 57 Cal.2d 319, 326, (1962) (internal quotes omitted).

To ensure that employers comply with the laws governing the payment of wages when an employment relationship ends, the California Legislature enacted Cal. Labor Code § 203 which provides for the assessment of a penalty against the employer when there is a willful failure to pay wages due the employee at conclusion of the employment relationship.

To be at fault within the meaning of Cal. Labor Code § 203, "the employer's refusal to pay need not be based on a deliberate evil purpose to defraud workmen of wages which the employer knows to be due. As used in section 203, 'willful' merely means that the employer intentionally failed or refused to perform an act *which was required to be done.*" (*Barnhill v. Robert Saunders & Co.* 125 Cal.App.3d 1, 7 (1981); *Mamika v. Barca,* 68 Cal.App.4th 487, 493 (1998).

"The settled meaning of "willful" is that an employer has intentionally failed or refused to perform an act which was required to be done; the employer's refusal to pay need not be based on a deliberate evil purpose to defraud workmen of wages which the employer knows to be due." (*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1201. *Davis v. Morris* (1940) 37 Cal.App.2d 269, 274; *Road Sprinkler Fitters*

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

*Local Union No. 669 v. G & G Fire Sprinklers, Inc*. 102 Cal.App.4th 765 (2002). While an employer's good-faith belief in a legal defense will preclude a finding of willfulness, <u>the issue is a question of fact to be resolved by the jury at trial</u>. *Drumm v. Morningstar, Inc*. 2009 WL 3721356 (N.D. Cal. 2009); *Lopez v. United Parcel Service, Inc.*, 2010 WL 728205; (N.D. Cal. 2010).

As noted hereinabove, the factual issue of whether Morgan was an exempt employee or not is not only a red herring, but the evidence reveals that CDS and Scott Richards, who worked with Morgan day in and day out, knew the work that Morgan was doing was non-exempt work, yet has now asserted a bad faith argument that they believed he was exempt, and, therefore, he would not be entitled to wait time penalties under Cal. Labor Code § 203, since they claim there was a "good faith" dispute which precludes the finding of willfulness.  However, "defenses presented which, under all the circumstances, are unsupported by any evidence, are unreasonable, or are presented in bad faith, will preclude a finding of a 'good faith dispute.' " *Troester v. Starbucks Corporation* 387 F.Supp.3d 1019, 1030, (C.D. Cal. 2019) *order clarified on reconsideration* (C.D. Cal., May 21, 2019, No. CV1207677CJCPJWX) 2019 WL 2902487; *Villalpando v. Exel Direct Inc.* 2015 WL 5179486, at *36 (N.D. Cal., Sept. 3, 2015, No. 12-CV-04137-JCS).

Where an employer "did not make a reasonable good faith legal mistake in failing to pay its workers their full wages upon termination of their employment," wait time penalties under Cal. Labor Code § 203 are appropriate. *Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc.*, 102 Cal.App.4th 765, 782-783 (2002). Scott Richards knows full well what tasks Morgan did while at CDS, not only because Scott Richards was there working with Morgan either in the same room, or in his area, not far from Morgan's, but also because prior to Morgan leaving CDS' employ Scott Richards expressly asked Morgan to put together a list of what he did so Scott Richards

17

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

could make sure Morgan's tasks were covered by other employees once Morgan left.

More than 30 days have elapsed since Morgan's employment at CDS terminated.

California Labor Code § 202 provides that, "[i]f an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting." CDS have willfully violated California Labor Code § 202 and Morgan is entitled to a penalty pursuant to California Labor Code § 203, which states: If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201,201.3, 201.5,201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced. Morgan is entitled to a penalty pursuant to California Labor Code § 203 in the amount of $22,500.00. This amount is equal to thirty day's pay based on an average work day of 10 hours, and a daily rate of pay of $750.00.

**Counterclaim 4:** "Breach of Contract" under California common law.

The employment contract between Morgan and CDS regarding the bonus were communicated to him both orally by Scott Richards, and via numerous email commitments made to Morgan regarding his bonus compensation. Morgan performed his side of that employment agreement by continuing to work for CDS until March of 2020.

The failure of the purported condition precedent of gross income sufficient to reach the required level was artificially manipulated by Scott Richards and CDS in a fraudulent effort to deprive Morgan and other CDS employees of their bonus compensation.

Numerous commitments were made to Morgan by Scott Richards and CDS that the bonus for 2018 & 2019 would be paid as due, but Scott Richards and CDS manipulated the books to avoid paying that obligation.

In the within matter, Morgan has set forth factual support for a determination by this Court that the essential elements to be established in an action for breach of contract have been presented; i.e. the contract; Morgan's performance of the contract or excuse for non-performance; CDS' breach, and the resulting damages to him. _Lortz v. Connell_ 273 Cal.App.2d 286 (1969).

Morgan's unpaid bonus was agreed to be 10% of his salary or approximately $15,000.00.

**Affirmative defenses**

**First defense**

The Complaint does not state facts sufficient to constitute a cause of action and/or claim for which relief can be granted.

Defendants maintain that Plaintiff fails to state facts sufficient to constitute a cause of action under The Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, _et seq._, in that it has failed to identify or establish any "Trade Secrets", as defined by the Act, that Defendants have misappropriated or threatened to misappropriate. Accordingly, Defendants maintain that Plaintiff has neither been damaged nor

1    harmed or that it will ever be in the future because of any unlawful action

2    undertaken by Defendants.

3    Defendants maintain that Plaintiff fails to state facts sufficient to constitute a cause

4    of action under the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ.

5    Code § 3426, *et seq.*, in that it has failed to identify or establish any "Trade

6    Secrets", as defined by the Act, that Defendants have misappropriated or

7    threatened to misappropriate. Accordingly, Morgan maintains that Plaintiff has

8    neither been damaged nor harmed or that it will ever be in the future because of

9    any unlawful action undertaken by Defendants.

10

11    Defendants maintain that Plaintiff fails to state facts sufficient to constitute a cause

12    of action under its claim for breach of fiduciary duty of loyalty in that Plaintiff has

13    failed to establish that Defendants had and/or breached a fiduciary duty of loyalty

14    to Plaintiff. Defendants deny having engaged in any wrongful conduct which

15    includes, but it not limited to, using confidential, trade secret or otherwise

16    proprietary information to solicit Plaintiff's suppliers and buyers or compete with

17    Plaintiff. Accordingly, Defendants maintain that Plaintiff has neither been

18    damaged nor harmed or that it will ever be in the future because of any unlawful

19    action undertaken by Defendants.

20

21    **Fourth Defense**

22

23        CDS' claims against Defendants fail, in whole or in part, because any

24    information accessed, viewed, used, or transferred by Defendants contained no

25    confidential, proprietary, or trade secret information belonging to CDS.

26

27    The information CDS alleges Defendants misappropriated does not qualify as "trade

28    secret" information. "Trade Secret" Defined. 18 U.S.C. §1839(3). "[T]he definition of

a trade secret consist of three elements: (1) information, (2) that is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret." *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020).

**Fifth Defense**

CDS' claims against Defendants fail, in whole or in part, because any information accessed, viewed, used, or transferred by Defendants was well known in the industry.
Information that is common knowledge in the industry is not proprietary, confidential or trade secret information. 18 U.S.C. §1839(3)(B).

**Sixth Defense**

CDS' claims against Defendants fail, in whole or in party, because CDS has not exercised reasonable or sufficient efforts to maintain the secrecy of any information alleged in the Complaint.

The information that CDS alleges was "trade secret" and that Defendants misappropriated was not protected by CDS or otherwise treated as secret. 18 U.S.C. § 1839(3)(A).

**Seventh Defense**

CDS' tort claims against Defendants fail because they are preempted by the California Uniform Trade Secrets Act.

~~[PROPOSED]~~ **FINAL PRETRIAL CONFERENCE ORDER**

CUTSA preempts Plaintiff's breach of the duty of loyalty claim because it is based on the same nucleus of facts as its misappropriation of trade secrets claim. See *Whiteslate, LLP v. Dahlin*, No. 20-CV-1782 W (BGS) (S.D. Cal. July 7, 2021) quoting *Mattel*, 782 F.Supp. 2d at 986.

**Eighth Defense**

CDS' claims against Defendants are barred or subject to reduction to the extent that CDS has failed or in the future fails to satisfy its duty to mitigate its alleged damages.

CDS made no effort to get allegedly misappropriated trade secrets back or to recover alleged loss of revenue.

**Ninth Defense**

Some or all of CDS' claims against Defendants are barred because the contractual provisions at issue are unenforceable or subject to limitation by the Court. Specifically, certain of the restrictive covenants at issue contain vague and ambiguous terms, are overbroad, and fail to reasonably define the geographical scope of the restriction, and therefore improperly restrain Defendants' right and ability to work and conduct business. The restrictive covenants are also unreasonable given the undue hardship they impose on Defendants in that they improperly restrain Defendants' right and ability to work in violation of California law and public policy.

CDS's claims against Defendants are essentially attempts to enforce unlawful restraints on trade. California Business and Professions Code section 16600 provides that "every

[PROPOSED] **FINAL PRETRIAL CONFERENCE ORDER**

contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

**Eleventh Defense**

CDS' claims against Defendants are barred, in whole or part, because any conduct by Defendants is privileged competition, and the Complaint constitutes an improper effort to restrain competition and employee mobility in violation of California public policy.

CDS's claims against Defendants are essentially attempts to enforce unlawful restraints on trade. California Business and Professions Code section 16600 provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

**Thirteenth Defense**

CDS' claim request for injunctive relief against Defendants is barred because CDS has not demonstrated a need or met the legal criteria for injunctive relief, including a likelihood of success on the merits, a risk of irreparable harm, or that the interests of justice or balance of harms favor injunctive relief.

In deciding an application for a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure, courts in the Ninth Circuit look to the following factors: The movant has shown a likelihood of success on the merits; There is a likelihood that the movant will suffer irreparable harm in absence of a preliminary injunction; The balance

of equities tips in the movant's favor; The injunction is in the public interest. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) CDS has not satisfied these elements.

**Fourteenth Defense**

CDS' requests for injunctive relief against Morgan are barred based on the existence of an adequate remedy at law.

CDS maintains that it has adequate remedy at law in the form of damages. Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages. Because intangible injuries generally lack an adequate legal remedy, intangible injuries may qualify as irreparable harm. *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014).

**Fifteenth Defense**

To the extent CDS' claims are based on the "inevitable disclosure doctrine," such claims fail because that doctrine is not legally cognizable or applicable.

CDS'S claims against Defendants rely on the inevitable disclosure doctrine. The inevitable disclosure doctrine is not legally cognizable. *UCAR Tech. (USA) Inc. v. Yan Li*, No. 5:17-CV-01704-EJD, 2017 WL 6405620 (N.D. Cal. Dec. 15, 2017); *Human Longevity, Inc. v. J. Craig Venter Inst., Inc.*, No. 18CV1656-WQH-LL, 2018 WL 6617633 (S.D. Cal. Dec. 18, 2018).

**Seventeenth Defense**

~~[PROPOSED]~~ **FINAL PRETRIAL CONFERENCE ORDER**

Some or all of CDS' claims against Defendants have been mooted following the return to CDS of all documents, drives, and/or information relating in any way to Defendants' substantive work for CDS.

Defendants returned everything and anything CDS requested which is allegedly a trade secret.

**Eighteenth Defense**

Defendants acted in good faith and did not directly or indirectly perform any acts that would constitute a violation of any rights of CDS or any duty owed to CDS.

Defendants have not engaged in any wrongdoing.

<u>Third Party Plaintiffs and Defendants:</u>

Not applicable.

8.     In view of the admitted facts and elements required to establish the claims, counterclaims and affirmative defenses, the following issues remain to be tried:

a)     Whether Plaintiff had any legally protected trade secrets or confidential information to protect?

b)     Whether any information accessed, viewed, used, or transferred by Defendants was well known in the industry?

[PROPOSED] **FINAL PRETRIAL CONFERENCE ORDER**

c) Whether Plaintiff exercised reasonable or sufficient efforts to maintain the secrecy of any trade secrets or confidential?

d) Whether Defendants misappropriated trade secrets belonging to CDS in violation of the DTSA?

e) Whether Defendants misappropriated trade secrets belonging to CDS in violation of the CUTSA?

f) Whether Morgan's conduct in violation of the DTSA and CUTSA was willful and malicious?

g) Whether Morgan breached his fiduciary duty of loyalty to CDS in violation of California common law?

h) Whether Morgan willfully deleted or destroyed electronic documentation to hide his actions evidencing misappropriation of trade secrets and breach of fiduciary duty?  [Defendants Object to the inclusion of this subparagraph (h)]

i) Whether CDS has failed or in the future fails to satisfy its duty to mitigate its alleged damages?

j) Whether Morgan is entitled to Waiting Time Penalties under Cal, Lab. Code §§ 510 & 1194, and Wage Order 16-2001?

k) Whether Morgan's claim for Waiting Time Penalties under Cal. Lab. Code §† 510 & 1194 and Wage Order 16-2001 is barred by the "good faith dispute" doctrine?

26

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

1

2        l)      Whether CDS failed to timely furnish accurate itemized wage

3   statements under Cal. Lab. Code § 226 and, if so, whether or not Morgan suffered and

4   harm as a result thereof?

5

6        m)      Whether CDS breached any alleged Employment Agreement with

7   Morgan?

8

9        9.     All discovery is complete except for the following:   Defendants have

10  agreed to provide updated discovery on economic damages.

11

12       10.    All disclosures under F.R.Civ.P. 26(a)(3) have been made.

13

14       The joint exhibit list of the parties will be filed under separate cover as required

15  by L.R. 16-6.1.  Unless all parties agree that an exhibit shall be withdrawn, all exhibits

16  will be admitted without objection at trial, except those listed below:

17

18       Plaintiff objects to Exhibit Nos. <u>712, 713, 714, 715, 716, and 731</u>
         Ex 731 was withdrawn at PTC

19

20       Defendant objects to Exhibit Nos. <u>None.</u>

21

22       The objections and grounds therefor are set forth in Plaintiff's Motion in

23       Limine to Exclude Inadmissible Hearsay Evidence:

24

25       11.    Witness lists of the parties will be timely filed with the Court as required

26  by L.R. 16-5.

27

28

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

the Court's Order(s) on the following motions shall remain and stand. The motions are as follows:

      (a)    CDS's Motion to Strike Defendants' "Unretained" Expert Witness Designations (ECF No. 58);

      (b)    CDS's Motion to Exclude the Expert Report and Testimony of William Lawrence (ECF No. 60);

      (c)    CDS's Motion to Preclude Evidence and Testimony regarding Alleged Criminal History (ECF No. 95); and

      (d)    Motion to Preclude Evidence and Testimony regarding Alleged Adult Entertainment Services (ECF No. 96).

13.    Bifurcation of the following issues for trial is so ordered:  None.

14.    The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial in this cause, unless modified to prevent manifest injustice.

*[signature]*

**UNITED STATES DISTRICT JUDGE**

9/5/23

Approved as to form and content. *+ as modified by Court*

---

30

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

1

2

**BURKHALTER KESSLER**
**CLEMENT & GEORGE LLP**

3   By:   */s/ Joshua A. Waldman*
         Alton G. Burkhalter, Esq.

4         Daniel J. Kessler, Esq.

5         Joshua A. Waldman, Esq.
         *Attorneys for Plaintiff*

6

7   **COHEN SEGLIAS PALLAS**
    **GREENHALL & FURMAN PC**

8

9   By:   */s/ Dana B. Hasness*
         Jonathan Landesman, Esq.

10        Dana B. Hasness, Esq.

11        *Attorneys for Plaintiff*

12

13   **MICHAEL P. RING & ASSOCIATES**

14   By:   */s/Michael P. Ring*
          Michael P. Ring, Esq.

15

16        *Attorney for Defendants*

17

18

19

20

21

22

23

24

25

26

27

28

~~[PROPOSED]~~ FINAL PRETRIAL CONFERENCE ORDER

1
2
3

## **DECLARATION OF ELECTRONIC SERVICE**

4
5

### **Central District of California**

6
7
8
9
10
11
12
13
14

Service of the attached documents was accomplished pursuant to Central District of California, Order Authorizing Electronic Filing, General Order No. 08-03 and Local Rule 5.3-3, which provide in part: "Upon the electronic filing of a document, a Notice of Electronic Filing (NEF) is automatically generated by the CM/ECF system and sent by e-mail to all attorneys in the case who are registered as CM/ECF Users and have consented to electronic service. Service by this electronic NEF constitutes service pursuant to the Federal Rules of Civil and Criminal Procedure for all attorneys who have consented to electronic service."

15
16
17

I, declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

18
19

Executed on July 28, 2023, at Irvine, California.

20
21
22

By: /s/ Joshua A. Waldman
JOSHUA A. WALDMAN, ESQ.

23
24
25
26
27
28

32

1
2
3
## CERTIFICATE OF SERVICE
4
5       I hereby certify that a true and correct copy of the foregoing **[PROPOSED]**
**FINAL PRETRIAL CONFERENCE ORDER** was served upon all parties that have
6   appeared in this action either individually or through counsel via electronic mail,
7   addressed below as follows:
8
Michael P. Ring, Esq.
9   RING & ASSOCIATES
10  1234 SANTA BARBARA STREET
SANTA BARBARA CA 93101
11  TEL. 805-564-2333
12  FAX 805-564-8899
13  mpr@ringlaw.net
Attorney for Defendants
14  DARYL MORGAN and CALL HAVEN PARTNERS, LLC
15
Jonathan Landesman, Esq.
16  COHEN SEGLIAS PALLAS GREENHALL & FURMAN PC
17  1600 Market Street, 32nd Floor
Philadelphia, PA 19103
18  TEL: 215-564-1700
19  FAX: 215-564-3066
20  jlandesman@cohenseglias.com
Co-Counsel for Plaintiff
21  CALL DELIVERY SYSTEMS, LLC
22
23  Dated:  July  28, 2023                        By: */s/ Andrea Frljuckic*
24                                                   ANDREA FRLJUCKIC
25
26
27
28

~~[PROPOSED]~~ FINAL PRETRIAL CONFERENCE ORDER